John SULLIVAN, John Kennedy, David Virella, and Vincent Argentina, Plaintiffs–Appellants,

v.

AMERICAN AIRLINES, INC., Stan Roberts, Edwin P. Argonza, II, Michael A. Chiofalo, Albert Gil, and Peter A. Perez, Defendants–Appellees.

Docket No. 04–0325–CV.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 2004.

Decided Sept. 13, 2005.

Michael G. O'Neill, New York, New York, for Plaintiffs–Appellants.

Harry A. Rissetto, Morgan, Lewis & Bockius LLP (Thomas E. Reinert, Jr., and Joseph A. Piesco, Jr., on the brief), Washington, DC, for Defendants–Appellees American Airlines, Inc., Stan Roberts, and Edwin P. Argonza, II.

Before: WALKER, Chief Judge, LEVAL and KATZMANN, Circuit Judges.

JOHN M. WALKER, Chief Judge.

The plaintiffs in this case, union members and employees of American Airlines, were mostly on the losing side of a hard-fought union election. They blame the loss, at least in part, on American, which suspended them during the campaign and then fired them for allegedly posting racist campaign fliers. Although American later reinstated them, the plaintiffs also want their names cleared of the taint of racism flowing from American's conclusion that they posted racist fliers. The plaintiffs also object to campaign fliers posted by their opponents in the election. To clear their names and recover for their loss of reputation, the plaintiffs filed a state-law defamation suit in New York state court against American, two of its managers, and three union members who ran against them.

American removed the case to federal court, arguing that (1) because the plaintiffs' state-law defamation claims were so-called minor disputes under the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., the district court had jurisdiction over the claims, and (2) because the RLA preempts state-law claims that are minor disputes, the claims should be dismissed. The district court (Carol Bagley Amon, *Judge*) agreed in part, dismissing one count of the complaint as preempted and remanding the other two counts to state court.

Unlike the district court, we do not reach the question whether the plaintiffs' state-law claims are the type of so-called minor disputes that, under the RLA, are within the exclusive primary jurisdiction of arbitral panels established pursuant to the RLA. Instead, we hold that even if state-law claims qualify as minor disputes under the RLA, the RLA does not completely preempt those claims and therefore does not provide federal courts with original jurisdiction over them. The district court therefore lacked subject-matter jurisdiction over this case. Accordingly, we vacate the district court's judgment and remand with instructions that the case be remanded to state court.

## I. BACKGROUND

In the spring of 2002, plaintiffs John Sullivan, David Virella, and Vincent Argentina, American Airlines employees, ran for reelection to their positions as officers of Air Transport Local 501 of the Transport Workers Union of America. Defendants and fellow employees Michael Chiofalo, Albert Gil, and Peter Perez ran on an opposing slate. According to the plaintiffs, during the campaign, the defendants posted in the workplace fliers disparaging Sullivan, Virella, and Argentina.[1]

Meanwhile, someone posted a flier accusing defendant Gil of having lied about his ethnicity. American Airlines has strict rules about racial harassment in the workplace, and defendants Stan Roberts and Edwin Argonza, managers at American, investigated the posting of this flier. In the course of the investigation, American suspended with pay plaintiffs Sullivan, Virella, Argentina, and John Kennedy (a fellow employee but not a candidate). Voting in the union elections took place while the plaintiffs were suspended; Sullivan and Virella lost their elections.

As a result of its investigation, American concluded (wrongly, according to the plaintiffs) that the plaintiffs had posted the flier about Gil. American fired all four plaintiffs and issued notices of termination, termed "final advisories," that included statements accusing them of having posted the flier. But after the plaintiffs lodged a grievance with the union protesting their termination, American backed down. American reinstated them, but it recast the "final advisories" (termination notices) as "second advisories" (warnings) that reiterated American's finding that the plaintiffs had posted the flier about Gil.

Not satisfied with just returning to work, the plaintiffs filed suit in New York state court alleging three counts of defamation. Count 1 accused opposing candidates Chiofalo, Gil, and Perez of defaming plaintiffs Sullivan, Virella, and Argentina under state law by posting "libelous" fliers about the plaintiffs; Count 1 also alleged that American was liable for the defamation because it allowed the fliers to remain on a company bulletin board. Count 2 accused American and its managers Roberts and Argonza of defaming all four plaintiffs by, inter alia, issuing the "final advisories" that asserted that the plaintiffs had posted the flier about Gil. Count 3 accused Chiofalo alone of defaming all four plaintiffs by asserting, at a union meeting, that the plaintiffs had posted the flier about Gil.

---

1. The fliers included the following statements and others like them: "Jack Sullivan, Secretary Treasurer of Local 501, guilty of discrimination by the U.S. government against its members"; "Guilty as charged! ... The Dave Virella administration has been found guilty of discriminating against its own members by the Equal Employment Opportunity Commission.... Guilty of unlawful employment practices against its own members." The "Dave Virella administration" allegedly referred to the plaintiffs collectively.

American responded by removing the case to federal court on the basis that Counts 1 and 2 asserted claims governed by the Railway Labor Act (RLA), 45 U.S.C. §§ 151–52, 154–88 (the airline-relevant provisions). The RLA gives primary jurisdiction over disputes between airlines and their employees that "grow[ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" to "board[s] of adjustment" (arbitral panels) established under the RLA. *See* 45 U.S.C. § 184; *see also id.* § 153 (First) (i) (governing railroads);[2] *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Such disputes are known as "minor disputes" under the RLA, as distinguished from "major disputes," which involve the formation of collective-bargaining agreements (CBAs) and are governed by different provisions of the RLA. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302–03, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (explaining the difference between minor and major disputes). The major-dispute provisions of the RLA are not relevant to this case.

█ On its face, the plaintiffs' complaint raises only state-law defamation claims. The Supreme Court has explained, however, that "where the resolution of a state-law claim depends on an interpretation of [a collective-bargaining agreement], the claim is preempted" by the RLA and must be brought before one of the arbitral panels established pursuant to the RLA. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). American argued before the district court that because resolution of the state-law defamation claims against it (Counts 1 and 2 of the complaint) would require the district court to interpret the collective-bargaining agreement, the claims were preempted and could not be heard in state or federal court.

As to Count 1, the district court disagreed. It found that the state-law defamation claim based on American's alleged endorsement of defamatory fliers posted by Chiofalo, Gil, and Perez could be evaluated without reference to the CBA and thus was not preempted by the RLA. As to Count 2, however, the district court agreed with American that resolving it would require interpreting the CBA and that it was preempted. It is from the dismissal of Count 2 alone that the plaintiffs appeal to this court.

## II. DISCUSSION

█ Because the district court dismissed Count 2 on the pleadings, we review the district court's decision de novo, taking the allegations in the complaint as true and making all reasonable inferences in the plaintiffs' favor. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.2004) (per curiam). The plaintiffs raised only state-law claims in their complaint, and the district court understandably, though mistakenly, accepted the premise of American's notice of removal that if the state-law claims in Counts 1 and 2 were preempted by the RLA, the district court had subject-matter jurisdiction over the case to decide the preemption question.[3] That premise, though it found some support in our case law when the district court made its ruling,

2. Section 153 (First) (q) also provides for limited federal-court review of the adjustment boards' decisions.

3. We raised sua sponte the question whether RLA preemption, even if found, could be a proper basis for federal subject-matter jurisdiction. The parties did not contest this issue below or on appeal, and the district court did not address it.

was mistaken. To understand why, we must examine the law of federal preemption in general and RLA preemption in particular as well as the difference between "complete" preemption, which can be the basis for federal subject-matter jurisdiction, and "ordinary" preemption, which cannot.

### A. Preemption and federal subject-matter jurisdiction

Federal courts are courts of limited jurisdiction. U.S. Const. art. III, § 2, cl. 1. American removed this case to federal court under 28 U.S.C. § 1441, which permits removal only of actions over which "the district courts of the United States have original jurisdiction ...." *Id.* § 1441(a); *see also id.* § 1441(b). If it exists at all, original jurisdiction in this case can be based solely on federal-question jurisdiction under 28 U.S.C. § 1331, which gives federal district courts jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States." The district court assumed (as did the parties) that if Count 2 was preempted by the RLA, a federal statute, Count 2 therefore arose under federal law.

■ The plaintiffs, however, raised only state-law claims in their state-court complaint. As a general rule, a suit seeking recovery under state law is not transformed into a suit "arising under" federal law merely because, to resolve it, the court may need to interpret federal law. *See Gully v. First Nat'l Bank,* 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."). This principle underlies the well-pleaded-complaint rule, which dictates that federal subject-matter jurisdiction can be founded only on those allegations in a complaint that are "well pleaded." *See Rivet v. Regions Bank of La.,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The well-pleaded-complaint rule mandates that in assessing subject-matter jurisdiction, a federal court must disregard allegations that a well-pleaded complaint would not include—e.g., allegations about anticipated defenses. *Rivet,* 522 U.S. at 475, 118 S.Ct. 921 ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."). Thus, a plaintiff may not create federal subject-matter jurisdiction by alleging in his complaint that the defendant's (anticipated) federal defense should fail. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ While the well-pleaded-complaint rule directs federal courts to disregard certain elements of a complaint in assessing federal subject-matter jurisdiction, federal courts sometimes do the inverse: read into a complaint elements that the plaintiff omitted. The artful-pleading doctrine, a corollary to the well-pleaded-complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by "artfully pleading" his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law. *See Rivet,* 522 U.S. at 475–76, 118 S.Ct. 921; *see also Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. 2841 ("[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."); *cf. Marcus v. AT & T Corp.,* 138 F.3d 46, 53–54 (2d Cir.1998). Faced with such an artfully (i.e., misleadingly) pleaded complaint, the federal court may construe the complaint as if it raised the federal claim that

actually underlies the plaintiff's suit. *Rivet*, 522 U.S. at 475, 118 S.Ct. 921.

The artful-pleading doctrine includes within it the doctrine of complete preemption.[4] *Id.* ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim."). Under the complete-preemption doctrine, certain federal statutes are construed to have such "extraordinary" preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore "arising under" federal law.[5] The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force

to support complete preemption: § 301 of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558–62, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), *see Metro. Life*, 481 U.S. at 65–66, 107 S.Ct. 1542; and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85–86, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).[6]

The complete-preemption doctrine must be distinguished from ordinary preemption, also known as defensive preemption. *See, e.g.,* 16 James Wm. Moore et al., Moore's Federal Practice § 107.14[4][b][i]-[iii] (3d ed.2005) (discussing types of preemption). Many federal statutes—far more than support complete preemption—will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under

---

**4.** The precise scope of the artful-pleading doctrine is not entirely clear. *See generally* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L.Rev. 1781 (1998). In this circuit, the artful-pleading doctrine has been relied upon to support federal-court jurisdiction where complete preemption did not apply, but where a plaintiff's state-law contract claims were construed as asserting rights arising only under federal tariffs. *See Marcus*, 138 F.3d at 55–56. The Eighth Circuit, by contrast, has said that the artful-pleading and complete-preemption doctrines are coextensive and that a federal court may therefore construe a plaintiff's state-law suit as raising a federal claim only where that claim arises under a completely preemptive statute. *See M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir.1991). Because we address in this opinion only complete preemption, which the Supreme Court in *Rivet* described as falling within the artful-pleading doctrine, 522 U.S. at 475, 118 S.Ct. 921, we need not try to trace the artful-pleading doctrine's outer boundaries.

**5.** Because complete preemption operates to create federal subject-matter jurisdiction, some commentators have argued that the doctrine would be better labeled "jurisdictional" preemption. *See* 15 James Wm. Moore et al., Moore's Federal Practice § 103.45[1] (3d ed.2005); *see also Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir.1989) ("The use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine."). We agree that the term "jurisdictional preemption" is more accurate, but follow convention (and the Supreme Court) in continuing to use the label "complete preemption."

**6.** The Supreme Court has also held in *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 667, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), that certain claims related to Indian tribal lands are completely preempted, but the preemption analysis in that case cannot be generalized to cases not involving Indian tribes. *See Beneficial Nat'l Bank*, 539 U.S. at 8 n. 4, 123 S.Ct. 2058.

state law. *See, e.g., Bates v. Dow Agrosciences LLC*, —— U.S. ——, 125 S.Ct. 1788, 1803, 161 L.Ed.2d 687 (2005) (explaining that 7 U.S.C. § 136v(b), a provision of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), preempts certain conflicting state laws and rules); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518–30, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (discussing what type of state-law claims are preempted by various federal statutes related to cigarettes); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir.2005) (holding that the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 et seq., preempts a Vermont law as applied to certain railroads). Ordinary defensive preemption comes in three familiar forms: express preemption, conflict preemption, and field preemption.[7] *See Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608; *Green Mountain R.R. Corp.*, 404 F.3d at 641. The Supreme Court has left no doubt, however, that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only ques-

tion truly at issue."); *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. 2841.

## B. Preemption under the RLA

■ Ordinary preemption is plainly a viable defense under the RLA: pursuant to 45 U.S.C. §§ 153 (governing railroads) and 184 (governing airlines), minor disputes must be heard in the first instance before arbitral panels, not courts, and state-law claims that are disguised minor disputes are therefore preempted by the RLA. *See, e.g., Hawaiian Airlines*, 512 U.S. at 253, 114 S.Ct. 2239 ("[A] determination that respondent's complaints constitute a minor dispute would pre-empt his state-law actions."). Further, the Court in *Hawaiian Airlines* established that the test for finding ordinary preemption under the RLA is the same as the test under § 301 of the LMRA. *Hawaiian Airlines*, 512 U.S. at 262–63, 114 S.Ct. 2239 (holding that *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), an LMRA case, "provides an appropriate framework for addressing pre-emption under the RLA" and "adopt[ing] the *Lingle* standard to resolve claims of RLA pre-emption").

■ The key question, however, is whether the analogy drawn by the Court between RLA and LMRA preemption as to *ordinary* preemption also extends to

---

**7.** Some commentators seem to equate the defense of field preemption, which defeats a plaintiff's state-law claim because federal law "occupies the field" within which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims. *See* 15 Moore's Federal Practice § 103.45[2] ("[I]n complete preemption cases, federal law *so occupies the field* that any complaint alleging facts that come within the statute's scope necessarily 'arise under' federal law, even if the plaintiff pleads a state law claim only." (emphasis added)). But no Su-

preme Court case has ever held the two forms of preemption to be equivalent. It is true that the defense of field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force. The two types of preemption are, however, better considered distinct. *See* S. Candice Hoke, *Preemption Pathologies and Civic Republican Values*, 71 B.U. L.Rev. 685, 747 (1991) ("Another pathology attending field preemption lies in some courts' confusion of field preemption with the complete preemption doctrine.").

*complete* preemption. *Hawaiian Airlines* came to the Supreme Court from the Hawaii Supreme Court, not from the lower federal courts, *id.* at 251, 114 S.Ct. 2239, so the Court had no occasion to consider whether the RLA, as does § 301 of the LMRA, supports federal subject-matter jurisdiction by completely preempting state-law claims within its scope. The district court in this case assumed that the RLA supports complete preemption of minor disputes and therefore focused on determining whether the plaintiffs' state-law defamation claims were such disputes, which are subject to ordinary preemption and can only be heard initially before RLA-mandated arbitral panels. In their briefs before this court the parties take a similar approach, assuming that the RLA supports complete preemption and fighting over whether the complaint in this case meets the standards for RLA/LMRA ordinary preemption outlined in *Hawaiian Airlines.*

Because complete preemption may be crucial to the existence of federal subject-matter jurisdiction, we cannot rely on the parties' assumptions about complete preemption under the RLA. We have an independent obligation to ensure that federal subject-matter jurisdiction exists, *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), which requires us to consider whether the RLA actually supports complete preemption—the only possible basis for subject-matter jurisdiction in this case. At oral argument we asked the parties whether *Geddes v. American Airlines, Inc.,* 321 F.3d 1349, 1354–57 (11th Cir. 2003), which held that there was no complete preemption under the RLA, affected their arguments in this case, and we directed the parties to brief the question.

American argues that complete preemption under the RLA is not an open ques-tion in this circuit and directs our attention to *Shafii v. British Airways, PLC,* 83 F.3d 566 (2d Cir.1996). A panel of this court in *Shafii* stated that where a complaint raises state-law claims that are "in fact preempted by the RLA, the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action." *Id.* at 569. This circuit's prior-panel rule directs us generally to follow the decisions of prior panels until they are overruled either by this court sitting en banc or by the Supreme Court. *Gelman v. Ashcroft,* 372 F.3d 495, 499 (2d Cir.2004). A subsequent panel may, however, reconsider a prior panel's holding that would otherwise be binding precedent not only when it has been directly overruled, but also "where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Union of Needle-trades, Indus. & Textile Employees v. INS,* 336 F.3d 200, 210 (2d Cir.2003).

It appears that the panel in *Shafii* assumed that *Hawaiian Airlines* was a complete-preemption case and that the analogy between LMRA and RLA preemption established by that case was total. Because the Court's more recent decision in *Beneficial National Bank,* the Court's latest complete-preemption opinion, entirely undermines this assumption about the RLA, we must reconsider *Shafii*'s conclusions about RLA preemption without hearing this case en banc.

The conflation of ordinary and complete preemption under the RLA reflected in *Shafii*'s reading of *Hawaiian Airlines,* and in the briefs of the parties in this case, is unsurprising, for under § 301 of the LMRA, establishing ordinary preemption also establishes removability. *See* 29 U.S.C. § 185(c) (expressly giving federal courts original jurisdiction over suits under the LMRA). In other words, in any

particular LMRA case, the defensive and complete-preemption inquiries collapse into one. But the higher-order inquiry into whether the RLA or the LMRA is completely preemptive is different, and requires looking at the federal statute rather than a particular state-law claim. *See* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction § 3722.1 (3d ed.1998) (describing the difference between complete and ordinary preemption as "a difference in kind").

As the Court explained in *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. 2841, the Court's earlier holding in *Avco* that state-law claims preempted by § 301 of the LMRA arise under federal law and are thus removable to federal court depended upon the "powerful" preemptive force of the LMRA itself. Once *Avco* established that the preemptive force of § 301 of the LMRA dictates that state-law claims within the statute's scope arise under federal law and are removable to federal court, subsequent courts have been obligated only to look at particular state-law claims to determine whether § 301, which provides for original federal jurisdiction of LMRA claims, comprehends those state-law claims. That is, once we know that a federal statute supports complete preemption, providing original jurisdiction in the federal courts over claims arising under the federal statute, in any particular case the complete— and ordinary-preemption inquiries merge. Thus when the Court in *Hawaiian Airlines* analogized ordinary RLA preemption to ordinary LMRA preemption, it was natural for the *Shafii* court to assume that the analogy went even further—if the analogy were total, then because establishing ordinary preemption under the LMRA also establishes removability (because § 301 supports complete preemption), so too would establishing or-

dinary preemption under the RLA establish removability.

We now know, however, that the analogy between RLA and LMRA preemption in *Hawaiian Airlines* was never meant to go so far. In *Beneficial National Bank*, the Court clarified that it had found complete preemption only under the LMRA and ERISA, not under the RLA. The Court noted, "In the *two categories* of cases where this Court has found complete pre-emption—certain causes of action under the LMRA and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial National Bank*, 539 U.S. at 8, 123 S.Ct. 2058 (footnote omitted; emphasis added). Had *Hawaiian Airlines* established that § 184 of the RLA, like § 301 of the LMRA, completely preempted state-law causes of action within its scope, the Court in *Beneficial National Bank* would have discussed three, not two, categories of cases involving complete preemption. Despite our decision in *Shafii*, in light of *Beneficial National Bank* we must reconsider the question of complete preemption under the RLA.

In *Beneficial National Bank*, the Court held that sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85–86, "provide the exclusive cause of action" for usury claims against national banks and therefore completely preempt analogous state-law usury claims. 539 U.S. at 11, 123 S.Ct. 2058. Sections 85 and 86 therefore have "the requisite pre-emptive force to provide removal jurisdiction." *Id.* In the course of bringing the list of completely preemptive federal statutes to three—the LMRA, ERISA, and now the National Bank Act—*Beneficial National Bank* explained that to determine whether a federal statute completely preempts a state-law claim

within its ambit, we must ask whether the federal statute provides "the exclusive cause of action" for the asserted state-law claim. *Id.* at 9, 123 S.Ct. 2058. If so, the asserted state-law claim "is in reality based on federal law ... [and] is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court." *Id.* at 8, 123 S.Ct. 2058. This language from *Beneficial National Bank* makes clear an aspect of the complete-preemption doctrine that is often overlooked: removal of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or the National Bank Act, but rather because a federal statute with completely preemptive force also gives rise to original federal jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441.

■ Once we recognize that a state-law-based RLA minor dispute cannot be brought within the original jurisdiction of the federal courts and is thus not removable under § 1441, it becomes clear that the RLA does not completely preempt state-law claims that come within its scope. By its terms, § 1441 allows removal only of suits "of which the district courts of the United States have original jurisdiction ...." 28 U.S.C. § 1441(a); *see also id.* § 1441(b). Put another way, "[o]nly state-court actions that *originally could have been filed in federal court* may be removed to federal court by the defendant." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425 (emphasis added).

Minor disputes under the RLA cannot be filed in the first instance in federal court; they are therefore not removable to federal court. Instead, primary jurisdiction over minor disputes under the RLA—the type of claim American asserts that Sullivan has raised—exists solely in the adjustment boards established pursuant to 45 U.S.C. § 153 (for railroads) or § 184 (for airlines). *See Consol. Rail Corp.,* 491 U.S. at 304, 109 S.Ct. 2477 ("The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes."); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.,* 789 F.2d 139, 141 (2d Cir.1986) ("The labor-management adjustment boards, created pursuant to 45 U.S.C. § 184, have exclusive jurisdiction over 'minor disputes' ...."). Indeed, American removed Sullivan's defamation claim to federal district court for the sole purpose of asking that court to dismiss Sullivan's claim on the basis that the federal court could not hear it.

As this case illustrates, allowing removal to federal court on complete-preemption grounds of state-law claims that also qualify as minor disputes under the RLA is internally inconsistent: the district court must have jurisdiction for removal to be proper, but the court must then dismiss the removed case because only adjustment boards, not federal courts, have primary jurisdiction over claims arising under the RLA. The latter negates the former. None of the three statutes that the Supreme Court has found to completely preempt covered state-law claims suffers from this inconsistency. When a state-law claim is removed to federal court because a section of the LMRA, ERISA, or the National Bank Act preempts it, the district court may then adjudicate the claim on the merits under the relevant preemptive statute. *See Avco,* 390 U.S. at 560–62, 88 S.Ct. 1235 (establishing complete preemption under § 301 of the LMRA; upholding the district court's exercise of jurisdiction to dissolve an injunction granted by a state court before removal); *Metro. Life,* 481 U.S. at 61–62, 65–67, 107 S.Ct. 1542 (estab-

lishing complete preemption under § 502(a) of ERISA; upholding district court's grant of summary judgment on the merits after case was removed from state court); *Beneficial Nat'l Bank,* 539 U.S. at 5, 10, 123 S.Ct. 2058 (establishing that state-law usury claims are completely preempted by §§ 85–86 of the National Bank Act; upholding district court's jurisdiction to adjudicate claims once they are recharacterized as claims under the National Bank Act).

Further, the RLA demonstrates that Congress knew how to create federal-court jurisdiction when it wanted to: the RLA provides for limited federal-court review of adjustment boards' decisions in cases involving railroads. 45 U.S.C. § 153(q). Had Congress wished to create a cause of action in federal court solely to determine whether a state-law claim was a minor dispute under the RLA, it could have done so. It did not.

Our conclusion about the lack of complete preemption under the RLA is buttressed by comparison to another type of labor-law preemption, *Garmon* preemption. The National Labor Relations Board (NLRB) has primary jurisdiction, by virtue of 29 U.S.C. §§ 159–60, over claims arising under Sections 7 and 8 of the National Labor Relations Act (NLRA), *id.*

§§ 157–58. The Supreme Court held in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–47, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), that neither state nor federal courts have jurisdiction over "activity [that] is arguably subject to § 7 or § 8 of the Act," *id.* at 245, 79 S.Ct. 773. Instead, such claims are committed in the first instance exclusively to the NLRB, just as minor disputes under the RLA must first be brought before adjustment boards. Although the Supreme Court has not addressed the question, "lower courts have uniformly held that defendants may not remove state claims to federal court by alleging *Garmon* preemption." *TKO Fleet Ents. v. District 15, Int'l Ass'n of Machinists & Aerospace Workers,* 72 F.Supp.2d 83, 87 (E.D.N.Y.1999) (collecting cases).[8]

In holding that there is no complete preemption under the RLA, we align ourselves on one side of a circuit split and follow what seems to be an emerging trend.[9] Because it follows from our holding that the district court lacked subject-matter jurisdiction over this case, we have no occasion to consider the merits of American's argument that the plaintiffs' defamation claims are minor disputes under the RLA that are subject to ordinary preemption. American is free to make

---

8. For a detailed discussion of *Garmon* preemption that supports our analysis, see *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1397–98 (9th Cir.1988).

9. *Compare Roddy v. Grand Trunk W. R. Inc.,* 395 F.3d 318, 326 (6th Cir.2005) (finding no complete preemption under the RLA); *Geddes v. Am. Airlines, Inc.,* 321 F.3d 1349, 1357 (11th Cir.2003) (same); *and Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942–43 (3d Cir.1988) (same), *with Graf v. Elgin, Joliet & E. Ry. Co.,* 790 F.2d 1341, 1344–47 (7th Cir.1986) (finding complete preemption under the RLA); *and Deford v. Soo Line R.R. Co.,* 867 F.2d 1080, 1085 (8th Cir.1989) (same, based on the inac-

curate observation that the Supreme Court in *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), allowed reliance on the RLA for removal jurisdiction). *See also Adames v. Executive Airlines, Inc.,* 258 F.3d 7 (1st Cir.2001) (case removed on RLA-preemption grounds; no discussion of complete preemption); *Ertle v. Continental Airlines, Inc.,* 136 F.3d 690 (10th Cir.1998) (same); *Kollar v. United Transp. Union,* 83 F.3d 124 (5th Cir.1996) (same); *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 669 n. 4 (9th Cir.1993) (noting intra-circuit conflict on RLA complete preemption).

this argument in state court and, ultimately, to seek federal-court review by petitioning the Supreme Court for certiorari if American loses in the state courts. *See Franchise Tax Bd.,* 463 U.S. at 12 n. 12, 103 S.Ct. 2841 ("[T]he absence of original jurisdiction does not mean that there is no federal forum in which a pre-emption defense may be heard.").

## III. CONCLUSION

The RLA commits to arbitral panels, not to federal courts, disputes between airlines and their employees that "grow[ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . ." 45 U.S.C. § 184. Because such disputes cannot be brought in federal court in the first instance, federal courts may not take jurisdiction over them simply to dismiss them on the basis that they are defensively preempted and belong before arbitral panels. We therefore VACATE the judgment of the district court and REMAND with instructions that the case be remanded to state court.