# United States Court of Appeals

## For the First Circuit

No. 07-2222

LEO E. FAYARD and SARA K. FAYARD,

Plaintiffs, Appellants,

v.

NORTHEAST VEHICLE SERVICES, LLC, EAST BROOKFIELD & SPENCER
RAILROAD, LLC, HOLSTON LAND COMPANY, INCORPORATED, CSX REAL
PROPERTY, INC., STEVEN M. PUGLIESE, and GEORGE W. BELL, II,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, U.S. District Judge]

Before
Boudin, Circuit Judge,
O'Connor,[*] Associate Justice (Ret.),
and Selya, Senior Circuit Judge.

David A. Wojcik with whom Donald C. Keavany, Jr. and
Christopher, Hays, Wojcik & Mavricos were on brief for appellants.
Ralph T. Lepore, III with whom Michael T. Maroney, Elizabeth
A. Mulcahy and Holland & Knight LLP were on brief for appellees.

July 14, 2008

[*]The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Defendants Northeast Vehicle Services, LLC, East Brookfield & Spencer Railroad, LLC ("EB&SR"); Holston Land Company, Inc., CSX Real Property, Inc., Steven Pugliese, and George Bell all play various roles in the ownership and operation of an automobile distribution facility located in the towns of East Brookfield and Spencer, Massachusetts.[1]  Plaintiffs, Leo and Sara Fayard, own a seventeen-acre farm in East Brookfield that abuts the rail line that services the facility.

In December 2006, the Fayards filed suit in Massachusetts state court asserting claims against the defendants based on defendants' operation of the rail line and distribution facility. They said that defendants' practices violated representations made to the Fayards and state and local environmental and zoning authorities as to various limits on the hours and volume of the operation, and interfered with the Fayards' use and enjoyment of their property--in particular, through noise, bright lights and the emission of diesel fumes.

Based on these events, the Fayards asserted in their complaint claims against the defendants under Massachusetts law for

---

[1]Holston owns the land on which the facility is located; CSX Real Property leases the land from Holston; EB&SR operates the rail line that transports automobiles from the CSX railroad mainline to the distribution facility; and Northeast Vehicle offloads the vehicles from the rail cars and prepares them for distribution to car dealerships.  Steven Pugliese and George Bell own a majority interest in both Northeast Vehicle and EB&SR.  Pugliese is now deceased and his executrix is in the process of being substituted as a party pursuant to Fed. R. App. P. 43.

nuisance, misrepresentation and civil conspiracy. The Fayards asked for monetary and injunctive relief--including limits on the facility's hours and methods of operation in accordance with alleged prior representations by the defendants. These limits, according to the railroad, would make operations at the facility unworkable.

Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(b) (2000). Defendants contended that removal was proper because the primary federal statute governing regulation of railroads--the Interstate Commerce Commission Termination Act ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 803 (codified in scattered sections of 11, 45, and 49 U.S.C. (2000))--"completely preempted" plaintiffs' state law claims against EB&SR, transforming the Fayards' suit into a federal action. See generally Negron-Fuentes v. UPS-SCS, ___ F.3d ___ (1st Cir. 2008).

The Fayards in turn sought a remand to state court, arguing that the doctrine of complete preemption was not applicable and that the district court therefore lacked subject matter jurisdiction to entertain the case. After briefing and a hearing, the district court denied the Fayards' motion, holding that the ICCTA "completely preempted" their nuisance claim, which the district court characterized--based largely on the relief sought by plaintiffs--as an attempt to regulate the railroad.

Plaintiffs moved for reconsideration, arguing for the

first time that EB&SR was not a "rail carrier" under the ICCTA, 49 U.S.C. § 10102(5), and so not governed by the act. They also moved, in case the federal court retained jurisdiction, for a preliminary injunction. The court denied both motions, deeming the "rail carrier" argument untimely and the nuisance claim unlikely to succeed on the merits.

Plaintiffs now seek review of both rulings. Ordinarily, the denial of a motion for remand is not subject to immediate review, but the district court certified the question to this court giving us jurisdiction. 28 U.S.C. § 1292(b). In any event, we have jurisdiction to review the denial of the preliminary injunction, id. § 1292(a)(1), and can review the denial of remand as an ancillary matter. James v. Bellotti, 733 F.2d 989, 992 (1st Cir.), cert. denied, 467 U.S. 1209 (1984).

Review of the district court's refusal to remand--turning as it did on a question of subject matter jurisdiction--is plenary. BIW Deceived v. Local S6, 132 F.3d 824, 830 (1st Cir. 1997). The denial of the preliminary injunction is reviewed for abuse of discretion. Jean v. Mass. State Police, 492 F.3d 24, 26 (1st Cir. 2007). As usual, underlying factual determinations are reviewed for clear error; legal questions de novo. Id.

The district court's subject matter jurisdiction here turns on whether defendants properly removed the suit. The removal statute, 28 U.S.C. § 1441, permits removal only where the district

-4-

court could have exercised original jurisdiction over an action. The parties here are not of diverse citizenship, and the Fayards' complaint--at least on its face--raised only state law claims. So the only colorable basis for removal, which the defendants invoked and the district court upheld, is jurisdiction based on the doctrine of "complete preemption."

Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim. A federal claim, of course, falls within the district court's federal question jurisdiction, 28 U.S.C. § 1331; Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916), so permitting removal. By contrast, ordinary preemption--i.e., that a state claim conflicts with a federal statute--is merely a defense and is not a basis for removal. Gully v. First Nat'l Bank, 299 U.S. 109, 115-16 (1936).

Complete preemption originated with the Supreme Court's decision in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448 (1957), and the Court has applied the doctrine in only a few contexts: labor contracts, Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968); claims for benefits from plans regulated by ERISA, Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); and usury claims against federally chartered banks,

<u>Beneficial Nat'l Bank</u> v. <u>Anderson</u>, 539 U.S. 1 (2003). Despite academic concerns,[2] the doctrine is well established, although perhaps poorly named, since ordinary "defensive" preemption may also be "complete," as where Congress "occupies the field," thereby blocking state regulation. <u>E.g.</u>, <u>Sullivan</u> v. <u>American Airlines, Inc.</u>, 424 F.3d 267, 273 n.7 (2d Cir. 2005).

The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, <u>e.g.</u>, <u>Avco</u>, 390 U.S. at 560, coupled with a federal cause of action for wrongs of the same type, <u>e.g.</u>, <u>Beneficial</u>, 539 U.S. at 10. Exclusive federal regulation alone might preempt state claims; but it is the further presence of a counterpart federal cause of action that allows the state claim to be transformed into a federal one.

For complete preemption to operate, the federal claim need not be co-extensive with the ousted state claim. On the contrary, the superseding federal scheme may be more limited or different in its scope and still completely preempt. <u>Cf. Caterpillar, Inc.</u> v. <u>Williams</u>, 482 U.S. 386, 391 n.4 (1987). This means--an example would be some state-law claims relating to pension plans--that the coverage that would have been supplied by

---

[2]<u>See generally</u> Seinfeld, <u>The Puzzle of Complete Preemption</u>, 155 U. Pa. L. Rev. 537, 553-54 (2007); Young, <u>Stalking the Yeti: Protective Jurisdiction, Foreign Affairs Removal, and Complete Preemption</u>, 95 Cal. L. Rev. 1775, 1812-19 (2007).

the state claim is not available under the federal ERISA scheme and so simply disappears.  E.g., Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1162 (10th Cir. 2004), cert. denied, 545 U.S. 1149 (2005).

This brings us to the application of the complete preemption doctrine in this case.  Although the lower courts are divided over specific applications,[3] one circuit has already held that the ICCTA can sometimes support complete preemption.  PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535 (5th Cir. 2005).  Historically, federal regulation of railroads has been extensive; and the ICCTA uses language that could support complete preemption in an appropriate case.  In discussing the scope of regulatory authority granted to the agency that administers the ICCTA (the Surface Transportation Board) the act broadly provides:

> The jurisdiction of the Board over transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules . . . practices, routes, services, and facilities of such carriers . . . is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are

---

[3]Compare, e.g., Roddy v. Grand Trunk W. R.R. Inc., 395 F.3d 318 (6th Cir.) (no complete preemption under Railway Labor Act), cert. denied, 546 U.S. 928 (2005), with Graf v. Elgin, Joliet & E. Ry. Co., 790 F.2d 1341, 1344-46 (7th Cir. 1986) (finding complete preemption under Railway Labor Act); and compare Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 986 (7th Cir. 2000) (finding complete preemption under the Federal Communications Act), with Marcus v. AT&T Corp., 138 F.3d 46, 53 (2d Cir. 1998) (no complete preemption under the Federal Communications Act).  See generally 14B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3722.1 & nn.27-28 (1998 & Supp. 2008).

> exclusive and preempt the remedies provided
> under Federal or State laws.

49 U.S.C. § 10501(b).

Belatedly, the Fayards argue that the ICCTA has no bearing on this case because the EB&SR is not a rail carrier within the meaning of the act. But it appears that EB&SR contracts with CSX--a large interstate railroad and admittedly a common carrier-- to undertake the last leg of transportation, and EB&SR apparently provides its services indiscriminately to any car shipper who wants them, meeting the conventional definition of common carrier. N.Y. Susquehanna & W. Ry. Corp. v. Jackson, 500 F.3d 238, 250-51 (3d Cir. 2007).[4]

But even where a federal statute can completely preempt some state law claims, the question remains which claims are so preempted. No one supposes that a railroad sued under state law for unpaid bills by a supplier of diesel fuel or ticket forms can remove the case based on complete preemption simply because the railroad is subject to the ICCTA. For complete preemption, the critical question is whether federal law provides an exclusive substitute federal cause of action that a federal court (or possibly a federal agency) can employ for the kind of claim or

---

[4]That EB&SR is a common carrier under the ICCTA appears to be the view both of the Board, East Brookfield & Spencer R.R., LLC-- Lease & Operation Exemption--CSX Transp., Inc., 2005 WL 2237178 (Surface Transp. Bd. Sept. 15, 2005), and a sister agency, Employer Status Determination, East Brookfield & Spencer Railroad, LLC (EBSR), Railroad Retirement Board B.C.D. 04-63 (Dec. 3, 2004).

-8-

wrong at issue.[5]  Accordingly, we narrow our focus to the nuisance claims brought by the Fayards.

At first blush, the ICCTA appears to provide the possibility of such a claim: railroads must "establish reasonable rates" and reasonable "rules and practices on matters related to . . . transportation or service." 49 U.S.C. § 10702.  The Board may determine which railroad practices violate that section, id. § 10704, and a federal cause of action is conferred upon those injured by practices that directly violate the act, id. § 11704; Rymes Heating Oils, Inc. v. Springfield Terminal R.R. Co., 358 F.3d 82, 89 (1st Cir. 2004).  Such claims may be pursued either in federal court or before the agency.  Pejepscot Indus. Park., Inc. v. Me. Cent. R.R. Co., 215 F.3d 195, 205 (1st Cir. 2000).

Yet despite the apparent breadth of the Board's mandate, it is far from clear that the ICCTA provides private redress for the kind of nuisance claims that the Fayards are advancing.  True, federal remedies extend to controversies between railroads and shippers and to certain other traditional matters,[6] but the

_____

[5]There is disagreement whether non-judicial claims alone can trigger complete preemption; this turns in part on the weight given to conceptual as opposed to prudential underpinnings of the doctrine.  Compare Lontz v. Tharp, 413 F.3d 435, 442 (4th Cir. 2005) (Wilkinson, J.) (administrative cause of action insufficient), with Graf v. Elgin, Joliet and Eastern Ry. Co., 790 F.2d 1341, 1344-46 (7th Cir. 1986) (Posner, J.) (arbitrable claim sufficient).

[6]See, e.g., 49 U.S.C. § 11705(a),(b); GS Roofing Prods. Co. v. Surface Transp. Bd., 262 F.3d 767, 777 (8th Cir. 2001); CSX

reference to "practices" may be limited by context, and we could find no Board or court precedents entertaining ICCTA claims seeking redress for railroad conduct akin to nuisance. Indeed, as the Board has explained:

> [T]he courts and the Board have found that any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad its ability to conduct its operations or to proceed with activities that the Board has authorized, is preempted. . . . At the same time, state and local regulation is applicable where it does not have the effect of preventing or unreasonably interfering with interstate commerce. . . . Finally whether a particular state or local regulation is being applied so as to not restrict unduly the railroad from conducting its operations, or unreasonably burden interstate commerce, is a fact-specific determination.

James Riffin--Petition for Declaratory Order, 2008 WL 1924680 (Surface Transp. Bd. May 1, 2008).

Consonantly, precedent confirms that state nuisance law continues to apply to railroads, e.g., Rushing v. Kansas City S. Ry., 194 F. Supp. 2d 493, 501 (S.D. Miss. 2001); Cannon v. CSX Transp. Inc, No. 1:01CV2296, (N.D. Ohio, filed Dec. 27, 2001), although specific applications may be preempted--for example, because the specific state claim is expressly preempted by federal law, e.g., Noise Control Act of 1972, 42 U.S.C. § 4916 et seq. (2000); Balt. & Ohio R.R. v. Oberly, 837 F.2d 108 (3d Cir. 1988),

_____

Transp., Inc.--Petition for Declaratory Order, 2005 WL 1024490, at *2-*4 (Surface Transp. Bd. May 3, 2005).

-10-

or implicitly preempted because it interferes with interstate commerce or federal regulation.[7]

Thus, if this were a suit under state law to hold a railroad rate unlawful, complete preemption might be arguable, given the ICCTA's exclusive federal regulation of such rates and its explicit damages remedy.  But while some state law claims may be completely preempted under the ICCTA, the question before us is whether the ICCTA automatically immunizes railroads from state nuisance claims.  It does not, nor does it clearly provide a federal cause of action amounting to nuisance.  Certainly nothing in the ICCTA provides for nuisance the clear-cut federal cause of action available to ERISA benefit claimants or those who seek to enforce labor contracts.

At the very least defendants, who bear the burden of showing that removal was proper, Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4  (1st Cir. 1999); Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995), have not demonstrated that the ICCTA provides such a cause of action for nuisance. And, in the absence of such a clear cut federal cause of action, there are good reasons, certainly for a lower federal

_____

[7]E.g., A & W Props., Inc. v. Kansas City S. Ry. Co., 200 S.W.3d 342, 351 (Tex. App. 2006); Vill. of Ridgefield Park v. N.Y. Susquehanna & W. Ry. Corp., 163 N.J. 446 (N.J. 2000); Cannon v. CSX Transp., Inc., No. 84373, 2005 WL 77088 (Ohio Ct. App. Jan. 13, 2005).  Compare Emerson v. Kansas City S. Ry. Co., 503 F.3d 1126 (10th Cir. 2007) (nuisance claim based on improper trash disposal by railroad not preempted by ICCTA).

-11-

court, to refuse to extend complete preemption beyond its current boundaries as reflected in the Supreme Court decisions.

To begin, the Supreme Court has described complete preemption as a "narrow exception," Beneficial, 539 U.S. at 5, to the usual rule against federal jurisdiction or removal premised merely upon a prospective federal defense. Both jurisdiction and removal are primarily creatures of Congress; and the balance Congress has struck should not lightly be disregarded. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Congress has only rarely chosen to make a federal defense the basis for federal jurisdiction or removal--the federal officer removal statute, 28 U.S.C. § 1442(a), being one example.

Further, numerous federal statutes regulate a great variety of entities, products, services and other activities affecting commerce (e.g., the food and drug laws, see Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001)); and if each of these regulatory schemes allowed for related state law claims to be removed to federal court merely because of a potential preemption defense, but without a federal cause of action, this would license wholesale transfer of state law claims into federal court. Cf. Campbell v. SmithKline Beecham, 919 F. Supp. 173, 176-77 (E.D.Pa. 1996).

Finally, where a clear cut federal cause of action exists focusing on the same wrong or harm, then some redress is

potentially available to an injured party--even if it is less complete than the supplanted state claim; but absent a clear cut federal cause of action, a danger exists of creating gaps in protection by categorically supplanting state claims with non-existent federal remedies. By contrast, where the state claim is left intact, federal interests are still largely protected: nothing prevents a preemption defense from being asserted, albeit in state courts.

Here, for example, the lack of complete preemption does not suggest that a state court could, on a nuisance claim, grant the relief sought by the Fayards. Defendants' affidavits say compliance with the conditions sought to be imposed by the Fayards as to hours, noise, lighting and the like would make its operation impossible. If so, the grant of relief arguably would interfere directly with operations that have been authorized by the Board under the ICCTA. 49 U.S.C. § 10704(a)(1).

If this is so, the ICCTA, backed by the Supremacy Clause, would likely preclude any such action by a state court. CSX Transp., Inc. v. City of Plymouth, 92 F. Supp. 2d 643, 647 (E.D. Mich. 2000). Damages claims based on the alleged nuisance could meet the same fate. Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co., 297 F. Supp. 2d 326, 332 (D. Me. 2003). The absence of complete preemption does not even prevent a federal injunction suit to forestall a state claim; but this ordinarily will not work

where, as here, the state law suit has already begun. See Younger v. Harris, 401 U.S. 37 (1971).

Admittedly, defensive preemption would not necessarily follow for claims based on alleged voluntary commitments by the railroad--which may underlie the Fayards' misrepresentation claim. The ICCTA and the Board apparently are more tolerant of self-assumed restrictions.[8] But the defendants have not urged complete preemption based on anything save the nuisance claims so questions of preemption, complete or defensive, with regard to Fayards' other claims need not be decided.

In sum, preemption may well be a defense to the Fayards' nuisance claims, but the conditions have not been met to authorize removal through the extreme and unusual outcome of complete preemption. The preliminary injunction was properly denied because inter alia of the prospects of a preemption defense; but the motion to remand should have been granted in the absence of any federal cause of action and therefore the absence of subject matter jurisdiction.

Accordingly, we vacate the district court's judgment and remand the case so that it may be remanded to the state court. The

---

[8]See 49 U.S.C. § 10709(c)(1); Allied Erecting & Dismantling Co., Inc. v. Ohio Cent. R.R., Inc., No. 4:06CV509, 2006 WL 2933950 at *4 (N.D. Ohio Oct. 12, 2006); Joint Petition for Declaratory Order--Boston & Maine Corp. and Town of Ayer, STB Finance Dkt. No. 33971, 2001 WL 458685 at *5 (Apr. 30, 2001) (ICCTA does not preempt state law claim seeking to enforce railroad's voluntary commitments).

-14-

Fayards have requested attorneys' fees for an improvident removal; given the complexity of the complete preemption question, their motion is <u>denied</u>. The motion to substitute Dorothy Pugliese, executrix, for Steven Pugliese, now deceased, is <u>granted</u>. Each side shall bear its own costs.

<u>It is so ordered.</u>